IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DWAYNE R. TORRENCE, JR., | * | |
| Plaintiff | * | |
| v | * | Civil Action No. SAG-20-1223 |
| DR. BARTELS, DR. WILLIAMS, DR. BERNARD, | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Counsel for the Division of Correction, Department of Public Safety and Correctional Services, has filed a court- ordered expedited Response to Dwayne R. Torrence, Jr.'s allegations that blood transfusions to treat his sick cell disease (SCD)[1] are intentionally delayed at Jessup Correctional Institution (JCI), and that he was denied transfusions from September 2019 through March 2020.

## BACKGROUND

SCD causes Torrence chronic chest and back pain, acute pain when he is in a sickle cell crisis, and priapism.[2]  (ECF No. 1 at 1).  In this Complaint filed on May 13, 2020, Torrence

---

[1] Sickle cell disease (SCD) is a group of inherited red blood disorders that affect hemoglobin, a protein in red blood cells that carries oxygen throughout the body. Individuals with SCD can have anemia and feel tired. SCD can cause a blockage that slows or stops the flow of blood to the tissues. The lack of oxygen can cause attacks of sudden, severe pain, called a pain crisis that can lead to stroke or organ damage from lack of oxygen. Treatments to relieve SCD symptoms include pain relievers for acute or chronic pain, hydroxyurea, a medicine shown to reduce or prevent several SCD complications, and blood transfusions for severe anemia. *See* https://medlineplus.gov/sicklecelldisease.html (visited June 9, 2020). The Food and Drug Administration has approved a medicine to reduce the number of sickle cell crises called Endari (L-glutamine). *See* https://www.cdc.gov/ncbddd/sicklecell/treatments.html (visited June 9, 2020).

[2] Priapism is a disorder in which the penis maintains a prolonged erection in the absence of appropriate stimulation. Early intervention is essential for the functional recovery of the penis. If left untreated, penile necrosis and eventually fibrosis results. *See* https://www.ncbi.nlm.nih.gov/books/NBK459178 (visited June 9, 2020).

explains his treatment includes monthly scheduled blood transfusions at UM,[3] which have been provided to him since his incarceration at North Branch Correctional Institution and other correctional institutions from July 2017 through May 2019. (ECF No. 1 at 2-3). He claims that he was transferred from North Branch Correctional Institution in Cumberland, Maryland to JCI, so that he would not miss his monthly blood transfusions. (*See* ECF 6 at 3). Until his transfer to JCI in May of 2019, he had never been denied his monthly blood transfusions because other correctional facilities "saw [the transfusion] was vital to sustaining my life." (ECF No. 1 at 2, 3; ECF No. 6-12 at 4-5; ECF No. 6-4 at 6).

Torrence claims Dr. Bartels denied him transfusions from September 2019 through March 2020, even though Dr. Roberts, Dr. Law, the hematologist at UM who treated Torrence for many years prior to his incarceration, and others urged that Torrence continue monthly transfusions. (*Id.* at 1, 3; *see also* ECF No. 6-4 at 17, 57, 61, 65). He alleges Dr. Williams and Dr. Bernard also denied him blood transfusions. (ECF No. 1 at 3). Torrence contends that without this treatment, his pain is so great that he has difficulty breathing, cannot get out of bed sometimes, and his body is deteriorating. (*Id.* at 2). He claims he was sent over "a dozen times" by ambulance to the hospital and admitted for weeks at a time "fighting to breathe because the pain was so great." (*Id.* at 1).

Torrence asserts that following his hospital admissions for transfusions, hospital staff advised JCI medical providers to continue his monthly blood transfusions and prescribe pain medications; however, JCI medical staff did not follow-up with the recommended consultations for monthly blood transfusions or prescribe recommended pain medication. He claims that

---

[3] Read in the context of the entire record, Torrence is referring to the University Maryland Hospital (UM), which is also referenced in the record as UMMC (University of Maryland Medical Center).

medical staff at JCI left him to deal with the pain in his cell sometimes with only the instructions from JCI medical providers to drink more water. (*Id*. at 1-2).

Torrence asserts that JCI medical staff is aware of his condition since he has submitted sick-call slips, through his chronic care appointments, his letter, telephone calls from Dr. Law and her staff, and the calls made by JCI tier officer to the JCI medical department advising of his medical emergencies. (*Id.* at 2; *see also* sick call slips, ECF No. 6-8 at 14-45).

The Response provides the following information.

On August 17, 2019, Torrence reported to a nurse practitioner that he had sickle cell crisis on the previous day and was experiencing priapisms. (ECF No. 6-4 at 13). The medical record reflects that the treatment plan was to start Torrence on L-glutamine and naproxen, continue Nubain[4] with the goal to wean him off, and in the event of a sickle cell crisis to infuse 2 liters of intravenous fluid normal saline at 125m/hr every 8 hours and provide oxygen through the nasal cavity in the event of a sickle cell crisis. (ECF No. 6-4 at 13, 17).

In October 2019, Torrence was hospitalized. In his hospital discharge summary dated October 26, 2019, Sowmya Arja, M.D. wrote that Torrence presented with:

> a vaso-occlusive crisis[5] and has been ongoing for 1 week now. Patient reports 10/10 crushing pain in his chest, back, bilateral knees, similar to crisis pain in the past. He also endorse some difficulty breathing and shortness of breath. He was given a dose of Ibuprofen and oxy[codone] at his facility, but to no relief. He denies any headache dizziness, nausea, vomiting, hematuria.
>
> Per the patient he has missed his last blood exchange, which was scheduled for September 23. His last one was in August 2019-reports that these have helped him from having VOC [vaso-occlusive crisis]. The last one he had was in August

---

[4] Nubain injections are used to relieve moderate to severe pain. *See* https://medlineplus.gov/druginfo/meds (visited June 11, 2020).

[5] *See* ECF No. 6 at 7 n.9 (explaining vaso-occlusive crisis occurs when circulation is obstructed by sickled red blood cells causing inadequate blood supply and pain).

> 2019. He continues to take folic acid and Eliquis.[6] For pain he is taking ibuprofen at his facility although he states that it does not help his pain. His facility also gives him a nubain injection to help control his pain, but this also does not help. They have offered him Tylenol, however, the patient is allergic to Tylenol. They have offered him ice packs, but he knows these will not be helpful in vaso occlusive crisis.

(ECF No. 6-4 at 31-32)

On November 22, 2019, Torrence filed administrative remedy request (ARP) JCI 1291-19, about his need for his monthly transfusions to get "back on track." (ECF No. 6-4 at 2-3). In the ARP, he notes his emergency admission to the hospital from October 20-26, 2019, because his hemoglobin was "dangerously low." (*Id.* at 2). The ARP was forwarded to JCI medical department for investigation. (*Id.* at 4, 5).

Meanwhile, on December 3, 2019, Libertatus DeRosa, M.D. wrote the following administrative medical note for Torrence:

> **1.    Sickle Cell Crisis- hx of acute chest pain syndrome**. Dr. Law called and wanted pt [patient] to be switched back to his exchange transfusion of 8 units-q 2 months to replenish the sickle cells with healthy cells. This is due to pt having ACS [acute pain syndrome]. Dr. Bartels advised that the std of care is hydroxyurea which I am not sure is superior to 8 unit ex[cha]nge transfusion. This may be lik[e]ly [sic] [p]t has si attaches since wit[h] priapism and has been on hydroxyurea since 8/17/19. Pt had a sickel [sic] crisis on 11/11/19.
>
> **2.    Pulmonary Embolus**
>
> **3.    Priapism** Pt had sickle cell crisis with ACS on 10/20 and repeat order for glutamine was rendered on the date with the expert opinion in CARES as below.[7]
>
> **4.    CARE expert opinion** ATP per UMMD Dr. Bartels. "Based on information provided, medical necessity is not demonstrated at this time. Consider restarting hydroxyurea for prevention of vaso occlusive episodes. It seems that IM did not

---

[6] The record indicates that Torrence was not complying with his regimen for Eliquis. (*See e.g.* ECF No. 6-4 at 13, 14). Eliquis is a blood thinner used to prevent blood clots. *See* https://medlineplus.gov/druginfo (visited June 9, 2010).

[7] The record does not explain the acronym "CARES."

> fail oral therapy but was noncompliant. Consider restarting Hydroxyurea and making medication DOT (directly observed treatment).[8]
>
> "Hydroxyurea should be the initial therapy used in the prevention of these events. Not exchange transfusion. Chronic transfusion therapy is started when the response to hydroxyurea is inadequate.

(ECF No. 6-4 at 17) (quotation marks are as they appear in the record).

On December 13, 2019, Torrence was seen by a nurse practitioner at JCI for complaints of chest pain and his concern that he was experiencing a sickle cell crisis. The medical note indicates that Torrence was being managed with L glutamine, and that he stated that "he has never taken his L glutamine." (ECF No. 6-4 at 20). Torrence was sent to the hospital as an emergency. (*Id.; see also* ECF No. 6-9 at 39).[9]

In a letter dated December 11, 2019, Torrence informed JCI Warden Allen Gang that he was not receiving blood transfusions. ECF No. 6-2 at 2. On December 17, 2019, Gang forwarded the letter to Ms. N. Hargraves, Manager of the JCI's medical department. Hargraves responded by email, stating:

> According to the EPHR (Electronic Patient Health Record) the consult for him to have transfusions was denied. It was recommended that he be treated with medication first. If this treatment plan fails, then they will consider transfusions. He was seen on the 13th and sent out 911. At his visit on 12/13, he admitted to not taking his medication. He is still hospitalized and is pending discharge. He will be scheduled to see the provider upon his return. He has to be compliant with his treatment plan as prescribed before he can go on to the next steps.

ECF No. 6-2 at 4.

---

[8] *See* ECF No. 6 at 7 n.8.

[9] This is the first time in the record that there appears to be an indication that Torrence did not comply with his medical regimen for L glutamine.

5

On December 21, 2019, after investigation of ARP JCI 1291-19 was completed, Warden Gang determined Torrence's allegations to be lacking in merit and dismissed the ARP. The ARP response states:

> According to the Health Service Administrator, there was a consult approved for 3 visits for blood transfusions. You were taken to UMMC on 5/28/19, 5/31/19 & 6/21/19. Another consult was written and approved, so you were taken on 7/26/19, 7/29/19 & 8/23/19. It is documented that you received Nubain shots for your pain, but you have also refused care and been non-compliant with Eliquis, Hydroxyurea[10] and L-Glutamine Eliquis was changed to DOT due to your non-compliance. Consults for any further blood transfusions have been denied. According to utilization management physicians, "Based on information provided, medical necessity [for transfusions is] not demonstrated at that time. Consider re-starting Hydroxyurea for prevention of vaso-occlusive[9] episodes and making medication DOT. "It seems that IM [inmate] did not fail oral therapy, but was non-compliant. Consider making restarting Hydroxyurea and making medication DOT. "Hydroxyurea should be the initial therapy used in the prevention of these events. Not exchange transfusion. Hydroxyurea is the only treatment that has been shown to decrease the incident rate of ACS [acute chest syndrome] episodes.
>
> ******
>
> You are expected to be complaint [sic] with your medication. If medication treatment fails, then you will be assessed again and your treatment plan updated. If you require additional medical intervention please follow the facility sick call process.

(ECF No. 6-4 at 1; *see also* ECF No. 6-4 at 17).

Torrence continued requiring hospitalization and transfusions for sickle cell crises. In his letter written to the executive director of the Inmate Grievance Office on March 3, 2020, Torrence stated that he had been admitted to the hospital as an emergency on February 25, 2020, and was not getting his blood transfusions. (ECF 6-6 at 3). The record suggests that he was also hospitalized on January 27, 2020 and March 23, 2020. (ECF No. 6-9 at 2, 36).

---

[10] There appears to be no evidence in the record that Torrence failed to take Hydroxyurea.

**DISCUSSION**

Torrence initiated this action on May 13, 2020, alleging that from September 2019 through March 2020, he was denied blood transfusions and required emergency hospitalizations. During that time the treatment plan was to manage his condition with medication and, for at least a portion of this time, there is evidence that Torrence did not follow his prescribed medication regimen. It is unclear whether since March of 2020, the medication regimen has improved his condition or has been determined unsuccessful, whether he continues to need emergency hospitalization, or whether regularly scheduled transfusions have resumed. In view of Torrence's history of multiple emergency hospitalizations during the period at issue and the gravity of his claims, the Court finds that additional information is needed. Counsel shall supplement the Report within fourteen days with Torrence's medical records for April, May, and June 2020, and file a declaration from his medical provider explaining Torrence's medical care since March of 2020.

Before the Complaint can proceed for service, Torrence must pay the $400 civil filing fee or file a motion for leave to proceed in forma pauperis. Torrence will be granted twenty-eight days to amend the Complaint to provide facts to support his allegation that Dr. Williams and Dr. Bernard denied him blood transfusions. Torrence will be sent an instruction and forms packet to assist him in providing this information. Torrence's Motion to Appoint Counsel (ECF No. 7), filed on June 10, 2020 will be considered after the supplement to the Report is filed. A separate Order follows.

June 12, 2020                          /s/
Date                                   Stephanie A. Gallagher
                                       United States District Judge